UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. C-02-105-1 |
| § | (CIVIL ACTION NO. C-09-109) |
| TIM C WILLIAMS § | |

ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
<u>ORDER DENYING CERTIFICATE OF APPEALABILITY</u>

Pending before the Court on remand from the Fifth Circuit is Movant Tim C. Williams' (Williams) motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. D.E. 188.[1] The Court DENIES Williams' motion to vacate and additionally, DENIES Williams a Certificate of Appealability.

**I.  FACTS AND PROCEEDINGS**

On May 23, 2002, Williams and two co-defendants were charged in a second superseding indictment with two offenses. The first count charged conspiracy to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h). The second count charged Williams with knowingly and intentionally conspiring to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). D.E. 10. Williams entered into a plea agreement with the government in which he pled guilty to both counts.  D.E. 48, 49.

Williams was sentenced on October 17, 2002, to 240 months on the money laundering conspiracy count, and 360 months on the drug conspiracy, to run concurrent. <u>See</u> <u>generally</u> D.E. 135, Sentencing Transcript. The Court also imposed a $25,000 fine as to Count One and $100

---

[1]  Docket entry references are to the criminal case, CR. No. C-02-105.

special assessment on each count. D.E. 88, 97. Judgment was entered on October 30, 2002. D.E. 97.

After sentencing, Williams filed a notice of appeal. D.E. 95. The Fifth Circuit affirmed Williams' conviction and sentence in an opinion issued on April 19, 2004. D.E. 171, 172. On May 15, 2009, the Clerk received Williams' motion pursuant to 28 U.S.C. § 2255. This Court denied the motion as untimely and denied Williams a Certificate of Appealability. D.E. 196. Williams appealed. The Fifth Circuit vacated the judgment and remanded holding <u>United States v. Santos</u>, 553 U.S. 507 (2008), applied retroactively. This Court now considers Williams' § 2255 on the merits and for the reasons set forth herein, Williams' motion is DENIED.

## II. MOVANT'S ALLEGATIONS

In his § 2255 motion, Williams urged a single ground of relief. Specifically, he argued that the Supreme Court's decision in <u>United States v. Santos</u>, 553 U.S. 507 (2008), means that the conduct used to sustain his conviction is no longer consider a crime and he is actually innocent of money laundering. <u>See</u> D.E. 188 at 4, 10; D.E. 194 at 3. Williams also contends that there is insufficient evidence to show he is guilty of laundering "profits," as required by the Court in <u>Santos</u>.

The United States' response urged two grounds, 1) Williams' motion is not timely, an issue disposed of by the Fifth Circuit, and 2) even if his motion were deemed timely, Williams is not entitled to relief under <u>Santos</u>.

## III. ANALYSIS

### A. Factual Background on Money Laundering

Williams was convicted upon his guilty plea to money laundering, although at the time of his rearraignment he disputed some of the factual statements by the government. Williams

disputed that he owned a California Flea Market or a mortgage company. D.E. 127-1 at 36. He claimed he was an employee of the Flea Market and was paid a commission of 10% by the owner and received a substantial commission when the owner sold the flea market. Id. Williams contends that his investment of $680,000 in the mortgage company came from his share of the proceeds from the sale of the flea market.

At sentencing, the Court adopted the Presentence Investigation Report (PSR) as the findings of the Court which attributed $245,453 of money laundered funds to the defendant. D.E. 135-3 at 154-55 (Sentencing); 65 at ¶ 14 (PSR).

Sentencing took place over two days and involved the testimony of numerous witnesses, including a participant in the drug conspiracy who was convicted in state court, but who was not indicted in federal court. That witness testified that Williams claimed to have laundered money through the California flea market which he owned, although it was in someone else's name, and Williams claimed to have laundered drug money using real estate purchases. The Court was also presented with portions of Florida Grand Jury transcripts of the testimony of Alma Williams, Tim Williams' wife, in which she described how she transported cash to pay Tim Williams' Florida attorney during Williams' previous Florida drug prosecution. Alma Williams described taking $50,000 in cash from their home safe in California, dividing it between herself and four others who concealed the money on their persons, and then she collected the money in Florida from the other four to pay $50,000 to Williams' attorney on Williams' instructions. She additionally described securing another $60,000 in cash from their home safe which she paid to others in exchange for their checks. She forwarded the checks to the Florida attorney to conceal the source of the funds. Alma Williams paid a total of $110,000 from cash in their home safe to Florida counsel at her husband's request. The remaining $135,453 was seized from the drug

coconspirators after the failed cocaine buy attempt in Floresville, Texas, which was the impetus for Williams' federal prosecution. See D.E. 1 (Indictment). $103,000 of those funds were traced to a bank withdrawal by Williams. The coconspirator testified that Williams gave him $140,000 to make the Floresville drug buy. The government offered additional evidence that Williams' federal tax returns for the relevant years did not support the large cash amounts Williams used to pay his Florida attorney or to buy drugs.

### B. Santos

Williams claims that the decision in United States v. Santos, requires the government to prove profits rather than proceeds in order to convict under the money laundering statute. Santos was a money laundering case arising out of an illegal gambling operation. Santos, 553 U.S. at 509-10. He further claims that because the government did not prove profits, he was actually innocent of the charge of money laundering.

The Santos four member plurality opinion determined that the money laundering statute was ambiguous when it used the words proceeds, and in the money laundering conviction before it which arose out of an illegal lottery, the government was required to prove proceeds not profits,

> From the face of the statute, there is no more reason to think that 'proceeds' means 'receipts' than there is to think that 'proceeds' means 'profits.' Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.

Santos, 553 U.S. 514. However, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the

narrowest ground.'" See Marks v. United States, 430 U.S. 188, 193 (1977) (citation omitted); see also Garland v. Roy, 615 F.3d 391, 403 (5th Cir. 2010) (interpreting Santos).

Justice Stevens filed a concurrence to the Santos plurality opinion in which he agreed with Justice Alito's dissent in part, "As Justice Alito rightly argues, the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." Id. at 525-26. Justice Alito's dissent which was joined by three justices, noted the narrow area of agreement, "Fortunately, Justice Stevens's opinion recognizes that the term 'proceeds' 'include[s] gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'" Id. at 531-32. "In light of the plurality opinion's discussion of 'the stare decisis effect of Justice Stevens' opinion,' . . . it must be noted that five Justices agree with the position taken by Justice Stevens on the matter discussed in the preceding sentence of the text." Id. at n.1.

Since the Santos decision, the circuit courts have worked to determine the precedential value of Santos as it applies to money laundering crimes other than those involving illegal gambling. Wilson v. Roy, 643 F.3d 433, 435-36 (5th Cir. 2011) (money laundering and drug trafficking); United States v. Ramos, 437 Fed. Appx. 368 at *1 (5th Cir., June 7, 2011) (designated unpublished) (money laundering and drug trafficking, "The government therefore was not required to prove that the laundered money constituted 'profits' rather than 'gross receipts' so we affirm."); Garland, 615 F.3d at 401-03 (applying Santos to money laundering in securities fraud, reviewing other circuit analyses and adopting Justice Stevens' concurrence as controlling law); United States v. Bueno, 585 F.3d 847 (5th Cir. 2009) (applying Santos to money laundering involving drugs); United States v. Fernandez, 559 F.3d 303 (5th Cir. 2009)

(applying Santos to money laundering in drug conspiracy). The Fifth Circuit has recently held "that Santos did not decriminalize financial transactions conducted with funds derived from drug activity." Wilson, 643 F.3d at 437.

In Wilson, the defendant was convicted of money laundering in connection with a drug trafficking conspiracy. He filed a petition pursuant to 28 U.S.C. § 2241 arguing that his money laundering conviction should be overturned after the Santos decision. The district court denied relief and the Fifth Circuit affirmed. Id. Relying on Justice Stevens' concurrence and Justice Alito's dissent in Santos, the Fifth Circuit held "in this case, which involves laundering the proceeds of the sales of illegal drugs, Santos does not have the effect of undermining Wilson's money laundering conviction, and thus Wilson cannot satisfy the requirement that he may have been convicted of a nonexistent offense." Id. at 437. The Wilson court reviewed decisions from the Second, Sixth, Ninth and Tenth Circuits that reached the same conclusion that proceeds did not mean profits in the context of money laundering of drug proceeds. Id. at n.3.

The Fifth Circuit's decision in Wilson controls the resolution of Williams'§ 2255 petition. The government was not required to prove profits, only proceeds. The government's evidence proved that Williams received drug proceeds, that he laundered those proceeds through real estate purchases and the California flea market, and his large amounts of cash could not be explained by legitimate sources of income. William's motion is DENIED.

### IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Williams has not yet filed a notice of appeal, the § 2255 Rules

instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 RULES.

A COA "may issue. . .only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added). Accordingly, Williams is not entitled to a COA.

## V. CONCLUSION

For the reasons outlined in this Order, Williams' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 188) is DENIED. Additionally, Williams is DENIED a Certificate of Appealability.

SIGNED and ORDERED this 8th day of December, 2011.

_____
Janis Graham Jack
Senior United States District Judge